IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LA ESTANCIA INVESTMENTS, L.P., | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| TOWN OF FLOWER MOUND, TEXAS, | § | |
| COUNCILMEMBER SAUDEEP | § | CIVIL ACTION NO. _____ |
| SHARMA, COUNCILMEMBER | § | |
| ANN MARTIN AND COUNCILMEMBER | § | |
| ADAM SCHIESTEL | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S COMPLAINT

La Estancia Investments, L.P., Plaintiff in the above-captioned civil action complains of the following causes of action against Defendants Town of Flower Mound, Texas, and Councilmember Sandeep Sharma, Councilmember Ann Martin and Councilmember Adam Schiestel, and alleges as follows:

### SUMMARY

1. This lawsuit is a result of a municipality's decision to deny a zoning application submitted by Crow Holdings on behalf of La Estancia that was in full compliance with the Town's Master Plan and historical practices. The individually named councilmembers violated the Texas Open Meetings Act in an effort to orchestrate the denial of Plaintiff's zoning application. As a result of the Town's denial Plaintiff's land has been reduced in value by over $40 million.

## PARTIES

2. Plaintiff La Estancia Investment, L.P. ("La Estancia") is a Texas limited partnership with its principal place of business located in Denton County, Texas. La Estancia's address is 6455 Dallas Parkway, Plano, Texas 75024.

3. Defendant Town of Flower Mound ("Town") is a home rule municipal corporation duly organized and existing under the laws of the State of Texas. City Attorney Bryn Meredith has agreed to accept service on behalf of the Town. Mr. Meredith's address is Taylor Olson Adkins, et al., 6000 Western Place, Suite 200, Fort Worth Texas 76107-4654.

4. Defendant Sandeep Sharma ("Sharma") is a member of the Town Council. City Attorney Bryn Meredith has agreed to accept service on behalf of Sharma. Mr. Meredith's address is Taylor Olson Adkins, et al., 6000 Western Place, Suite 200, Fort Worth Texas 76107-4654.

5. Defendant Ann Martin ("Martin") is a member of the Town Council. City Attorney Bryn Meredith has agreed to accept service on behalf of Martin. Mr. Meredith's address is Taylor Olson Adkins, et al., 6000 Western Place, Suite 200, Fort Worth Texas 76107-4654.

6. Defendant Adam Schiestel ("Schiestel") is a member of the Town Council. City Attorney Bryn Meredith has agreed to accept service on behalf of Schiestel. Mr. Meredith's address is Taylor Olson Adkins, et al., 6000 Western Place, Suite 200, Fort Worth Texas 76107-4654.

7. The Texas Attorney General may be served with notice of this cause of action by serving the Office of the Attorney General, P.O. Box 12548, Austin, Texas 78711-2548.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the controversy arises under the Constitution, laws, or treaties of the United States. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because this is a civil action "to redress the

deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States" under 28 U.S.C. § 1367(a), which provides supplemental jurisdiction over state law claims so related to claims in an action within this Court's original jurisdiction that they form part of the same case or controversy; under 28 U.S.C. § 2201, to secure declaratory relief; under 28 U.S.C. § 2202 to secure injunctive relief; and under 42 U.S.C. § 1988, to award attorney's fees.

9.    Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b) because the Town is located within the judicial district of this Court and the causes of action involve land located within the judicial district of this Court.

10.   The Town does not enjoy immunity with respect to the claims asserted in this Complaint due to the Town's violations of Plaintiff's constitutional rights, inverse condemnation/regulatory takings, and violations of Plaintiff's civil rights under Title 42 of the United States Code.

## NATURE OF THE ACTION

11.   La Estancia Investments, L.P. ("Ewing") is a limited partnership owned and controlled by members of the Ewing Family.  Ewing family members have owned 263 acres of land located to the west of Cross Timbers Road (FM 1171) and FM 377 as shown in <u>Exhibit A</u> ("Property") since 1963.  Finley Ewing, Jr. and his wife Gail Ewing originally purchased the tract. In 1983 and 1984 a portion of, their interests in the Property were conveyed to their children and grandchildren.  Subsequently, the family's interests were conveyed to Ewing Enterprises Limited Partnership.  Plaintiff La Estancia Investments, L.P. obtained title to the Property from this Partnership on December 29, 2008.

12. The Property was annexed by the Town in 1999 and zoned Interim Holding for temporary zoning purposes. Several thousand acres, a portion of which included the Property, were included in this annexation. Prior to annexation, Mayor Laurie Deluca met with Finley Ewing III to discuss the Town's vision for future land uses for the Property. The Mayor told him that industrial uses would be required for the Property in order to enhance the Town's property tax base. Ewing's reasonable investment-backed expectations were based, in part, upon the Town's planning documents and the Town representations that the Town would require future use of the Property for industrial purposes.

13. Flower Mound's zoning process is different than that of other Texas cities. Under Texas law, zoning regulations must be approved in conformance with a comprehensive plan. § 211.004, Tex. Loc. Gov't. Code. Generally, city council votes on zoning applications in these cities are viewed as legislative discretionary matters. *Thompson v. City of Palastone,* 510 S.W.2d 574 (Tex. 1974). But the Town's ordinances and historical practice show that the Town routinely approves a rezoning application that complies with its comprehensive plan and denies those applications that fail to comply with the plan. Flower Mound Development Code Sec. 98-74(a) states as follows:

> (a) In applying the SMARTGrowth criteria to a specific development application or project, a "pass-fail" evaluation will be utilized to determine compliance with applicable criteria. In other words, for a development application or project to attain compliance with the SMARTGrowth program (ensuring that it contributes to community character and quality of life objectives), it must be evaluated as "passing" or complying with each applicable SMARTGrowth criterion. Otherwise, it will "fail" and be denied until such time as compliance is or can be attained.

14. The Town references the sacrosanct nature of the Master Plan in § 8.05 of its Charter: "Any amendment to the Master Plan of the Town of Flower Mound or any amendment of the SMARTGrowth Program requires the approval of three-fourths (3/4) of the membership of the

Council."  Similar language with respect to zoning amendments can be found in § 211.006(d) of the Texas Local Government Code.  Requiring a supermajority vote to amend the comprehensive plan is difficult to achieve and is unique to Flower Mound.  Thus, the approval of zoning applications that comply with the Town's Master Plan have become ministerial and nondiscretionary. *State v. Biggar,* 873 S.W.2d 11 (Tex. 1984).

15. Ewing put the Property under contract to Crow Holdings Industrial ("Crow") in 2021.  The contract contemplated that Crow would proceed with applications to obtain zoning and other development permit approvals from the Town.  The purchase price in the contract was for over $50 million.

16. Crow retained engineers and consultants to prepare and process the zoning application ("Application") for an industrial business park.  The zoning requested by Crow was Campus Industrial and Industrial District Two in accordance with Flower Mound's Master Plan ("Master Plan") designated future land use for the property.  Numerous meetings and conversations were held with Town staff, planning and zoning commission members and Town Council members.  Many of these individuals stated that the Application would be approved if the zoning request complied with the Town's Master Plan.  Crow spent in excess of $400,000.00 to prepare the necessary studies and process the Application.  Approximately 47 meetings and numerous conversations were held with landowners and residents in the area to discuss the proposed project. Numerous concessions were made by Crow for the proposed industrial park in response to input from landowners and residents in this vicinity and Town staff. Crow kept Ewing advised of these conversations and meetings.

17. Attached as <u>Exhibit B</u> is a true and correct copy of portions of the staff report for ZPD21-0014-Cross Timber Business Park.  The staff report notes the compliance of the

Application with the provisions of the SMARTGrowth and Master Plan and satisfies the "pass-fail" evaluation in § 98-74(a). Ewing's reasonable investment-backed expectation was that the Town would approve the fully compliant Application.

18. As shown in <u>Exhibit C</u>, Crow complied with Section 2, Area Plans, of the Master Plan which was in effect at the time of the Application. It defines Campus Industrial as follows:

> Large scale developments such as corporate offices, office parks, Service/repair, light industry, clean assembly and similar uses, in a planned campus settings. Retail and restaurant uses serving the campus industrial uses could be included, if they are planned as integral elements of the developments.

The requested underlying zoning in the PD was based, in part, on certain uses and standards in the Campus Industrial (CI) district. The Town's Land Development Regulations defines this district as follows:

> The CI campus industrial district is designed primarily to accommodate a variety of light industrial developments such as industrial parks, clean manufacturing, office/showrooms and similar uses in a planned campus setting. Retail, restaurant, hotel and similar uses serving the commercial/industrial uses could be appropriate, if they are planned as integral elements of the developments. In addition to the use and area regulations of this section, development in the CI campus industrial district shall be in compliance with all other applicable provisions of this chapter.

19. In addition to land use, the Application complied with other aspects of the Town's ordinances and Master Plan. The proposed conceptual elevations were in compliance with the Urban Design Plan, which indicates that service areas, including but not limited to truck docks, should be planned for internal locations within the development. In order to comply with the Urban Design Plan component of the Master Plan, Crow proposed a combination of berms and screening walls along Denton Creek Boulevard to shield truck docks from view.

20. At its April 4, 2022 meeting as indicated in the agenda attached as <u>Exhibit D</u> the Town Council met in an illegal closed executive session to discuss the Crow project. This closed

<u>**PLAINTIFF'S COMPLAINT**</u> – Page 6

session occurred without notice to Plaintiff and in spite of the fact that the Application had not yet been heard by the Planning and Zoning Commission.  No litigation had been threatened and there were no exceptions as stated in § 551.071 of the Texas Government Code that would have allowed this closed meeting.

21.     Prior to the April 4 meeting the individual Town Council member Defendants held several Zoom meetings with groups of individuals opposed to the Application.  Similar communications were held with members of each of these groups.  The individual Defendants then participated in the illegal April 4 executive session.  These meetings constituted a "walking quorum" in violation of § 551.143, Tex. Govt. Code:

> (a)     A member of a governmental body commits an offense if the member:
>
> (1)     knowingly engages in at least one communication among a series of communications that each occur outside of a meeting authorized by this chapter and that concern an issue within the jurisdiction of the governmental body in which the members engaging in the individual communications constitute fewer than a quorum of members but the members engaging in the series of communications constitute a quorum of members; and
>
> (2)     knew at the time the member engaged in the communication that the series of communications:
>
> (A)     involved or would involve a quorum; and
>
> (B)     would constitute a deliberation once a quorum of members engaged in the series of communications.

22.     At least one councilmember Defendant stated at a campaign event he would oppose warehouses in residential neighborhoods.  The individual Town Council members had knowledge of the contents of each other's Zoom meetings and these campaign activities.  Three councilmembers constitutes a quorum in Flower Mound.  They knew at the time that the

communications were made that the three councilmembers would involve a quorum and would constitute a deliberation by the Council.

23. Following the April 4 events, the Town held the public hearing on the Application on April 18, 2022. A significant number of individual opponents to the Application appeared at the April 18, 2022 city council meeting. Attached as <u>Exhibit E</u> is a true and correct copy of the draft minutes of the meeting ("Minutes"). According to the Minutes about 50% of the opponents were not Flower Mound residents.

24. Following the public hearing on the Application the Town Council convened into closed executive session for one hour and fifteen minutes. No specific reason was given for going into closed session, and no litigation had been threatened at that time. This closed meeting violated the Open Meetings Act.

25. After reconvening from the closed session Councilmember Schiestel made a motion read from a piece of paper prepared during executive session. He moved to zone the land for Planned Development ("PD") with a limited number of allowed uses. Schiestel listed them all in quick succession, as well as several uses that would not be allowed. In addition, the concept plan for the PD was deleted from the Application. He said all future proposed developments would have to get Council zoning approval to build. The Town did not give Crow a chance to speak in opposition to the motion, though a representative tried. A true and correct copy of the Town Ordinance ("Ordinance") approving the downzoning of the Property is attached as <u>Exhibit F</u> ("Involuntary Downzoning"). Instead of simply denying the Application, the Council duplicitly deprived Ewing of all development rights with its sham "approval."

26. Following are four significant adverse impacts of the Town Council vote. First, the Ordinance was opposed by the applicant. In other zoning cases, the Council would simply deny

an application rather than approve an application with conditions opposed by the applicant. A denial would have allowed the Property to retain its temporary Interim Holding District designation. The applicant and the council in a typical situation negotiate the terms of the PD. If a mutually agreeable set of conditions cannot be reached the Council will deny the application or the application will be withdrawn. The advantage to the landowner is that an outright denial potentially allows a lower voting percentage requirement by the Town Council to obtain a new zoning district pursuant to § 211.006, Tex. Loc. Gov't Code.

27. Second, the Ordinance stripped all potential industrial uses as a matter of right on the Property. As a result, the zoning does not comply with the Master Plan as required by Town of Flower Mound charter and zoning ordinance. The Town did not follow its established historical procedures when it removed uses from the zoning that complied with the Master Plan.

28. Third, by removing all exhibits, the PD zoning violates Division 21 of the Flower Mound Zoning Ordinance which requires that an approved concept plan must be included in the PD zoning ordinance. The Town did not follow its established procedures when it refused to comply with its own ordinances.

29. Fourth, any potential use of the Property requires approval of a conceptual plan which constitutes a zoning change with public hearings. The Town can now deny any potential use of the Property at its discretion.

30. The Town approved a rezoning application over the applicant's objection. The Town's involuntary zoning approval has rendered the Property undevelopable. Further, the Ordinance has diminished the market value of the Property by tens of millions of dollars.

## PLAINTIFF'S CLAIMS FOR RELIEF

### First Cause of Action
(Inverse Condemnation)

31. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

32. The Town's decision to downzone the Property is an intentional deprivation of Ewing's constitutional right to use and enjoyment of the Property. Ewing's reasonable investment backed expectations were to sell or develop the Property in accordance with the Master Plan as reflected in the Application. The Involuntary Downzoning lowered the market value of the Property by tens of millions of dollars. Because the Town took these actions for public use as a result of complaints by members of the public, the actions constitute a temporary or permanent taking of Plaintiffs' property rights in violation of Art. I, § 17 of the Texas Constitution and Article 5 of the U.S. Constitution.

33. The Town's Involuntary Downzoning has prevented all development of the Property and deprived Plaintiff of all economically beneficial use which constitutes a temporary or permanent taking of Plaintiffs property rights in violation of Art. 1, § 17 of the Texas Constitution and Article 5 of the U.S. Constitution.

34. The Town does not enjoy sovereign immunity as to inverse condemnation claims. Plaintiffs seek actual damages for the Town's regulatory taking of its protected property interests, as well as its actual damages pursuant to 42 U.S.C. § 1983 and attorney's fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violations of the Fifth Amendment of the United States Constitution. Plaintiff is entitled to recover either permanent or temporary damages for this taking.

### Second Cause of Action
(Denial of Due Process and Due Course)

35. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

36. The Town has deprived Plaintiff of its protected property rights in violation of the due process, due course and equal protection provisions under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 19 of the Texas Constitution. The Town's actions have been arbitrary and have been taken as regulators to take Plaintiff's property rights. Any reasonable voting members of the Town Council would know that the Town's actions violate state law, lack a reasonable basis and are arbitrary and capricious. Plaintiff's procedural due process rights have been violated by the individual Defendants' violations of the Texas Open Meetings Act. The Town does not enjoy sovereign immunity for constitutional violations.

37. Plaintiffs have sustained, and seek an award of, actual damages resulting from these U.S. and Texas constitutional violations, as well as its actual damages pursuant to 42 U.S.C. § 1983, along with an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violations of the Fifth and Fourteenth Amendments to the United States Constitution.

### Third Cause of Action
(Denial of Equal Protection)

38. Plaintiff incorporates the foregoing paragraphs as fully set forth here.

39. For the reasons set forth herein, Defendants have discriminated against Plaintiff for no rational purpose and have denied Plaintiff's equal protection rights. Defendants approved the Ordinance based on pretextual and invalid reasons.

40. The Town has treated Plaintiff, the Property and the Application vastly different than other development applications. The Town's actions are arbitrary and capricious and violate the Equal Protection Clause, such Equal Protection being guaranteed to Plaintiff by Article 1, Section 3 of the Texas Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution.

41. Plaintiff further seeks the actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendants' violation of the Fifth and Fourteenth Amendments of the United States Constitution.  Damages are not authorized by Texas courts for equal protection violations under the Texas Constitution.

### Fourth Cause of Action
(Declaratory Judgment)

42. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

43. For the reasons set forth herein, the Court should declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 that the Ordinance violates §§ 211.004-.005, Tex. Loc. Gov't. Code and is null and void.

### Fifth Cause of Action
(Open Meetings Act Violates)

44. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

45. Plaintiff seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and the Texas Open Meetings Act, Chapter 551 of the Texas Government Code, that the vote of the Town Council on the Application is void or voidable, as having been enacted in violation of the Open Meetings Act.  To further this end, the Court is authorized to make an in camera inspection of the recording and/or certified agenda of the subject executive session, and to admit said recording or agenda into evidence in this matter pursuant to § 551.104 of the Open Meetings Act, and Plaintiff requests that the Court exercise this power to ensure equitable relief.

### Sixth Cause of Action
(Attorney's Fees)

46. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

47. Under the authority of the Texas Uniform Declaratory Judgment Act, Texas Civil Practice and Remedies Code Section 37.001, et seq. and 42 U.S.C. § 1988, Plaintiff additionally claims reasonable attorney's fees and costs, both in the trial of this cause and in connection with any subsequent appeal.

## JURY TRIAL

48. Plaintiff hereby demands a jury trial.

## CONDITIONS PRECEDENT

49. All conditions precedent to Plaintiff being entitled to bring this action and recover the relief requested herein have been performed, have occurred or have been waived.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court enter judgment:

a. Entering the declarations as requested herein;

b. Against Defendant for Plaintiff's damages and reasonable and necessary attorney's fees and costs of court;

c. For such other and further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

WINSTEAD PC
2728 N. Harwood Street
Suite 500
Dallas, Texas 75201
(214) 745-5400 - phone
(214) 745-5390 - fax


By:   /s/ Arthur J. Anderson
    Arthur J. Anderson    SBT# 01165957
    Brad Monk    SBT# 24077502

**ATTORNEYS FOR PLAINTIFF**